UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PATRICIA GARSKOF,

                Plaintiff,

v.                                         Case No.  5:07-cv-288-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 19 and 20.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On September 8, 2003, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of April 5, 2003, due to fibromyalgia, chronic fatigue syndrome, chronic pain, and depression.  (R. 68-70, 77, 258-261.)  Plaintiff's application was denied at the initial and reconsideration level and a request for a hearing before an Administrative Law Judge ("ALJ") was timely filed and later held on August 20, 2006. (R. 44-46, 51-56, 280-312.)  The ALJ issued an unfavorable decision to Plaintiff on January 24, 2007.  (R. 13-

22.) Plaintiff's request for a review of the hearing decision was denied by the Appeals Council. (R. 6-10.) Plaintiff then appealed to this Court. (Doc. 1.)

## I.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12]  Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17]  In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work").

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 54 years old at the time of the ALJ's final decision.  (R. 22, 68.) Plaintiff has a high school education and past relevant work as a food service director. (R. 78, 285-286.)  Plaintiff contends that she has been unable to work since April 5, 2003, due to fibromyalgia, chronic fatigue syndrome, chronic pain, and depression.  (R. 77.)

During the period from June of 2002 through April of 2005, Plaintiff was treated by Dr. Ricky Lockett for fibromyalgia and cervical, thoracic and lumbar paraspinal strains and sprains.  (R. 191-240.)  Dr. Lockett found tenderness and muscle guarding of the cervical paraspinal musculature bilaterally and point tenderness over the

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

sacroiliac joints. (R. 203, 204, 206, 208, 210-211, 213, 215, 217-221, 223, 224, 226, 229, 232, 234, 237-240.) Dr. Locket further noted tenderness and muscle guarding of the upper trapezius muscle bilaterally and the thoracic and lumbar musculature bilaterally. Dr. Lockett diagnosed Plaintiff with fibromyalgia and she was treated with Pamelor, Synthroid, and Methadone. (R. 206, 213.)

On August 13, 2003, Plaintiff underwent an MRI which revealed minimal encroachment on C6-7, by diffuse annular bulge, and a suprahyoid thryoglossal duct cyst but this did not result in an obstruction of the airway. (R. 228.)

Dr. Edward Demmi conducted a consultative evaluation of Plaintiff on March 25, 2004. (R.134-138.) Dr. Demmi's diagnostic impression was fibromyalgia, chronic fatigue syndrome, depression and migraines. (R. 137.) The only positive finding by Dr. Demmi was tenderness over Plaintiff's bilateral trapezius.

In January of 2004, Plaintiff underwent a consultative psychological evaluation by Dr. Thomas Hibberd, Ph.D. (R. 113-115.) Dr. Hibberd diagnosed Plaintiff with major depressive disorder. (R. 115.) In June of 2004, Plaintiff was admitted to Seven Rivers Regional Medical Center with a polydrug overdose. (R. 157.) Dr. Gary Crawley, M.D., a psychiatrist, evaluated Plaintiff and diagnosed her with a major depressive episode. Considering the Plaintiff's depressive disorder, the ALJ determined that this impairment was severe and results in mild restrictions of daily living, mild difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, but determined that there were no episodes of decompensation in work-like settings. (R. 19.)

Plaintiff testified at the administrative hearing. (R.281-312.) Plaintiff testified that she suffers from excruciating pain (R. 288, 291), swelling (R. 289), headaches (R. 290), hypothyroidism (R. 291), panic attacks (R. 298-299), and crying episodes. (R. 299.) Due to her difficulty sleeping, she is required to take two naps per day. (R. 293.) Plaintiff also stated that she must elevate her legs several times per day. (R. 289.) Plaintiff estimates that she could stand 10 minutes at a time, that she could sit 7-10 minutes at a time, but stated that her lifting is limited to no more than 10 pounds. (R. 294-295.)

In her review of the record, including Plaintiff's testimony and the medical records, the ALJ determined that Plaintiff suffered from fibromyalgia, hypothyroidism, muscle/ligament disorder, and an affective disorder. (R. 18.) The ALJ determined that Plaintiff's fibromyalgia and muscle/ligament disorder caused severe limitations in Plaintiff's ability to perform basic work activities. (R. 19.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 19.)

The ALJ went on to find that Plaintiff retains the residual functional capacity ("RFC") to perform light work. (R. 20.) In particular the ALJ found that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; that she can sit/stand and/or walk up to 6 hours in an 8-hour workday with unlimited pushing and pulling; but that she has postural limitations for occasionally climbing (ramp, stairs, ladder, rope, scaffolds), balancing, stooping, kneeling, crouching, and crawling. The ALJ also found that Plaintiff has environmental limitations and should avoid concentrated exposure to

extreme cold/heat and to hazards.  The ALJ then found that Plaintiff can perform simple, routine, repetitive tasks (R. 19) and that she has occasional limited reaching in all directions, including overhead.  (R. 20.)

The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, she did not find Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms entirely credible.  (R. 21.)  Ultimately, the ALJ determined that Plaintiff is unable to perform her past relevant work.  (R. 22.)

Randolph Salmons, a vocational expert ("VE") testified at the hearing. The ALJ posed two hypothetical questions to the VE. (R. 304-311.) The first hypothetical posed to the VE asked the VE to assume an individual with the following: (1) a worker between the ages of 50 and 54; (2) with the education and past relevant work of the Plaintiff; (3) with the ability to perform light work; (4) who has occasional postural activity; (5) who should avoid concentrated exposure to extreme cold, heat and hazards; (6) who has limitations in reaching all directions, including overhead to occasionally; (7) who can perform well structured task activities; and (9) who has the ability to focus attention in a sustained fashion but may need goal setting assistance.  (R. 305-306.)  Based upon this hypothetical, the VE opined that Plaintiff could perform her past relevant work.  (R. 306.) The ALJ modified the second hypothetical to include an individual who could only perform simple, routine, repetitive tasks.  (R. 307.)  With that modification, the VE determined that Plaintiff could not perform her past relevant work.  (R. 307.)  However, the VE then testified that Plaintiff could perform the work of an assembler (DOT 706.87-010 and DOT 739.687-030) and that there were 9,000 of these jobs statewide and

377,000 of these jobs nationally.  (R. 22, 304-312.)  Based upon this testimony, the ALJ determined that Plaintiff is not disabled because she is able to perform other unskilled work that exists in significant numbers in the national economy.  (R. 22.)

## IV.  DISCUSSION

Plaintiff only raises one issue on appeal. Plaintiff argues that the testimony from the VE was flawed because there was an inconsistency between the VE's testimony that the job of assembler could be performed with a limitation of occasional reaching and the description of the job of assembler in the Dictionary of Occupational Titles, which describes the job as requiring frequent or constant reaching. Relying upon Social Security Ruling ("SSR") 00-4p  - which requires that an ALJ  explain and resolve any conflicts between a VE's testimony and the Dictionary of Occupational Titles ("DOT") - the Plaintiff contends that the case should be reversed and remanded because the ALJ failed to explain and resolve the conflict.

There are two obligations of the ALJ under SSR 00-4p.  First, "[w]hen a VE...provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE...evidence and information provided in the DOT."[22]  Simply stated, under the first requirement of SSR 00-4p, the ALJ must ask if there is a conflict.  The second requirement under SSR 00-4p provides that "when there is an apparent unresolved conflict between VE...evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE...evidence to support a

---

[22]  Social Security Ruling 00-4p, 65 Fed. Reg. 775759-01, 2000 WL 1765299 (Dec. 4, 2000).

9

determination or decision about whether the claimant is disabled."[23] Thus, where the ALJ learns of a conflict he is required to discuss and resolve the conflict.

With regard to the first requirement, the ALJ specifically instructed the VE during questioning at the hearing to make the ALJ aware of any inconsistencies between the VE's testimony and the DOT. (R. 305.) The transcript of the hearing reflects the following colloquy:

> ALJ: Mr. Salmons [the VE], I would ask if there are any inconsistencies between your testimony and information in the DOT that you make me aware of those inconsistencies.
>
> VE: Yeah.

(R. 305.)  Accordingly, by expressly directing the VE to advise the ALJ of any inconsistencies, the ALJ satisfied the first requirement of SSR 00-4p.

The Plaintiff's legal argument focuses on the second requirement - i.e. the requirement to resolve any conflicts between the testimony of the VE and the DOT. Although there was no mention at the hearing of an inconsistency - nor was there any testimony from the VE that there was an inconsistency - Plaintiff has now gone back and compared the VE's testimony to the technical requirements of the DOT and points out that there is an inconsistency with regard to the limitation on reaching. During the hearing, the VE testified that there are two assembler jobs that Plaintiff could perform, each of which only requires "occasional" reaching. (R. 20, 305-308.)  The DOT, however, describes the two assembler jobs as requiring "frequent" or "constant"

---

[23] Id.

reaching, which are inconsistent with Plaintiff's reaching limitation.[24] Because the ALJ did not address this inconsistency, Plaintiff contends that the case should be reversed and remanded pursuant to SSR 00-4p.

The problem with Plaintiff's argument is that Plaintiff incorrectly assumes SSR 00-4p is violated simply where an inconsistency may exist. This interpretation is generally at odds with the law in the Eleventh Circuit - predating SSR 00-4p - concerning the binding effect of the testimony of a VE when there is a conflict. Secondly, Plaintiff's interpretation of SSR 00-4p is at odds with cases interpreting SSR 00-4p, which only require the ALJ to resolve the conflict when he is made aware of an inconsistency.

Before SSR 00-4p was promulgated in December 2000, several circuits had taken different approaches to resolving a conflict between the testimony of a VE and the DOT.[25] The Eleventh Circuit was one of the circuits that had addressed the issue. In *Jones v. Apfel*[26] the Eleventh Circuit held that "...when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."[27] The court in *Jones* reasoned that the VE's testimony may be followed because the "DOT is not the sole source of admissible information concerning jobs" and that by its own wording "the SSA itself does not

---

[24] SOC. SEC. ADMIN., DICTIONARY OF OCCUPATIONAL TITLES § 706.687-010 n.6; SOC. SEC. ADMIN., DICTIONARY OF OCCUPATIONAL TITLES § 739.687-030 n.6.

[25] *See,* cases collected in Donahue v. Barnhart, 279 F.3d 441, 445 (7th Cir. 2002)("three circuits hold that an ALJ always may prefer the testimony of a vocational expert over the conclusions in the *Dictionary* ... [T]hree more circuits allow the ALJ to accept a vocational expert's position, but only after providing an explanation(with record support) for doing this ... (citations omitted)").

[26] 190 F.3d 1224, 1229-1230 (11th Cir. 1999)

[27] Jones at 1229-1230.

consider the DOT dispositive."[28] Thus, under *Jones* an ALJ may rely upon the testimony of a VE without first resolving any conflict with the DOT.

After *Jones* was decided, SSR 00-4p was promulgated. The promulgation of SSR 00-4p does not, however, undo the rule in *Jones* nor does the ruling by its own wording, mandate that an ALJ has a duty to independently investigate whether there is a conflict between the VE's testimony and the DOT.

Rather, the ruling only obligates the ALJ to ask the VE whether there is a conflict and if the VE identifies a conflict the ALJ is required then - and only then - to address the conflict in his decision and resolve it. Therefore, where, as here, the VE has not identified any conflict with the DOT, the ALJ does not violate SSR 00-4p by relying upon the opinion of the VE - so long as the ALJ asked the VE to identify any conflicts - and the ALJ is not required independently to identify whether there is any inconsistency.[29]

In the instant case the ALJ complied with the requirements of SSR 00-4p when she affirmatively directed the VE to make the ALJ aware of any conflicts between the VE's testimony and the DOT. Plaintiff never identified any conflicts at the hearing and

---

[28] *Id.* at 1230.

[29] *See, e.g.* Brijbag v. Astrue, No. 8:06-cv-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008)("the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT."); Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 2006 WL 509393, at *4-5 (6th Cir. 2006)(unpublished)(holding that "[n]othing in SSR-004p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct" and therefore "[b]ecause [theVE] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."); Haas v. Barnhart, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004)(where conflict not brought to the attention of the ALJ it was not reversible error for the ALJ to rely upon the testimony of the VE); Lembke v. Barnhart, 2006 WL 3834104 *15 (W.D. Wis. 2006)(reversal is not warranted where plaintiff identifies a conflict after the hearing but during the hearing no conflict was identified so long as the ALJ complied with SSR-004p by asking the VE at the hearing to identify conflicts); Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. 2003)(no error under SSR 004p where the VE did not identify conflicts with the DOT).

never raised any conflict through questioning the VE, despite being represented by counsel. Accordingly, because there were no conflicts between the VE's testimony and the DOT, which were identified at the hearing, the ALJ was not required under SSR 00-4p to address and resolve any conflict.

There is another more fundamental problem with Plaintiff's argument. That is - Plaintiff's argument is based on the incorrect premise that a Social Security ruling can trump a decision from the Circuit. As a panel of the Circuit recently held in *Miller v. Commissioner Of Social Security*,[30] a *per curiam* decision, because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE, without resolving the conflict. This is so, according to *Miller,* because the rule in *Jones* that the "VE's testimony trumps the DOT," is binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p.[31]

Accordingly, because the ALJ had no obligation to resolve a conflict that was not identified at the hearing and in view of the fact that the law in the Circuit provides that an ALJ may rely upon the testimony of a VE even if it is in conflict with the DOT, the ALJ did not err by relying upon the testimony of the VE in concluding that Plaintiff was not disabled because there were a substantial number of jobs available in the national economy which Plaintiff could perform at her given residual functional capacity.

---

[30] 246 Fed. Appx. 660, 662, 2007 WL 2461771 (11th Cir. 2007).

[31] *See also,* Corbitt v. Astrue, 2008 WL 1776574 at *6 (M.D. Fla. 2008) in which Judge Snyder concluded that in light of the *Miller* decision *Jones* is still binding precedent and thus failure to resolve a conflict prior to relying upon the VE does not constitute error.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 26, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
 All Counsel